UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TIUN D. TODD, <br><br> Plaintiff, <br><br> vs. <br><br> JUDY HUTCHMEIER, Drug Treatment Specialist at FPC Yankton, in her individual capacity; SARAH HOXENG, RDAP staff member at FPC Yankton, in her individual capacity; AMANDA MILLAGE, RDAP staff member at FPC Yankton, in her individual capacity; DR. EMILY BECKER, Drug Abuse Program Coordinator at FPC Yankton, in her individual capacity; MR. POWELL, Acting Warden at FPC Yankton, in his individual capacity; MAGGIE JENSEN, RDAP staff member at FPC Yankton, in her individual capacity; and WARDEN ERIN PENROSE, Warden of FPC Yankton, in his individual capacity, <br><br> Defendants. | 4:25-CV-04118-KES <br><br><br> 1915A SCREENING |

Plaintiff, Tiun D. Todd, an inmate at the Yankton Federal Prison Camp, filed a pro se civil rights lawsuit. Dockets 1, 1-1, 1-2. The court granted Todd's motion for leave to proceed in forma pauperis and order him to pay an initial partial filing fee in accordance with 28 U.S.C. § 1915(b)(1). Docket 5. Todd timely paid the initial partial filing fee. This court will now assess Todd's claims under 28 U.S.C. § 1915A.

## I.  Notice of Misspellings

After Todd paid the initial partial filing fee, he filed a notice advising that the names of the some of the defendants had been misspelled in his initial complaint and providing the correct spelling of the defendants' names. Dockets 6, 7. According to Todd's notice, the correct spelling of defendant Jenson's last name is Jensen. Docket 7 at 3. Defendant Penrose's first name is Erin. *Id.* at 5. The correct spelling of defendant Hoxing's last name is Hoxeng. *Id.* at 9. The court has corrected the caption to include the correct spellings of defendants' names, and this order will refer to defendants using the correct spelling of each defendant's name.

## II.  1915A Screening

### A.  Factual Background Alleged by Todd

Todd is a federal prisoner currently detained at the Yankton Federal Prison Camp (FPC). Docket 1-2 ¶ 3. Todd's claims arise out of his removal from the Residential Drug Abuse Program (RDAP) at Yankton FPC. *See generally id.* Defendant Judy Hutchmeier is a drug treatment specialist at Yankton FPC. *Id.* ¶ 4. Defendant Mr. Powell is the acting warden at Yankton FPC. *Id.* ¶ 5. Defendant Amanda Millage is an RDAP staff member at Yankton FPC. *Id.* ¶ 6. Defendant Dr. Emily Becker is the drug abuse program coordinator at Yankton FPC. *Id.* ¶ 7. Defendant Maggie Jensen is an RDAP staff member at Yankton FPC. *Id.* ¶ 8. Defendant Sarah Hoxeng is an RDAP staff member at Yankton FPC. *Id.* ¶ 9. Defendant Erin Penrose is the warden of Yankton FPC. *Id.* ¶ 10. Todd sues all defendants in their individual capacities. *Id.* ¶¶ 4–10.

2

Todd is serving a sentence for a drug-related offense. *Id.* ¶ 11. Todd was enrolled in the RDAP at Yankton FPC. *Id.* ¶ 12. According to Todd, if he successfully completes the RDAP, it could qualify him for a sentence reduction under 18 U.S.C. § 3621(e). *Id.* During an RDAP community business meeting on October 4, 2024, Todd stated that there was "nefarious business happening in the community" and reported that personal belongings had been stolen from his locker. *Id.* ¶ 13. Hutchmeier claimed that Todd's statement was aggressive and threatening. *Id.* ¶ 14. Todd denies that his statement was threatening and contends that he did not intend to make a threatening statement. *Id.*

Shortly after Todd made the statement, Powell spoke with Todd. *Id.* ¶ 15. Todd explained to Powell that his belongings had been stolen, and Powell acknowledged that stealing was unacceptable. *Id.* Powell thanked Todd and did not indicate that anyone attending the community business meeting had reported a perceived threat. *Id.* No incident report was issued related to the October 4, 2024 meeting, and no disciplinary action was taken against Todd. *Id.* ¶ 16.

Todd participated in RDAP meetings on October 5 and 6, 2024. *Id.* ¶ 23. On October 7, 2024, Hutchmeier informed Todd that he must attend a treatment team meeting for intervention purposes. *Id.* ¶ 17. Hutchmeier, Millage, Dr. Becker, Jensen, and Hoxeng were present during the October 7, 2024 meeting. *Id.* ¶ 18. During the meeting, Todd was informed that he was being removed from the RDAP "due to the alleged aggressive and threatening nature of his October 4, 2024, statement[.]" *Id.* Dr. Becker made the final

3

decision to remove Todd from the RDAP, but relied on "Hutchmeier's subjective allegations without evidence." *Id.* ¶ 20. Because of his removal from the RDAP, Todd is ineligible for a potential sentence reduction, resulting in "prolonged incarceration and emotional distress." *Id.* ¶ 22.

Before Todd's removal from the RDAP, Hutchmeier, Millage, Becker, Jensen, and Hoxing failed to provide Todd with a formal hearing, written notice of the allegations, or an opportunity to present evidence or witnesses. *Id.* ¶ 19. After his removal, Todd filed an administrative remedy (BP-09) with Penrose. *Id.* ¶ 21. Penrose affirmed Dr. Becker's decision and stated that "there was no policy regarding RDAP, despite clear BOP regulations (28 CFR § 550.53) requiring due process." *Id.*

During a random search, another inmate, Robert Cecil Henry, was found to be in possession of a cellphone and a nicotine vaping device. *Id.* ¶ 24. On November 7, 2024, Henry was found guilty of a 100-series infraction and a 300-series infraction because of his possession of contraband. *Id.* Approximately two weeks after his disciplinary hearing, Henry was reinstated to the RDAP. *Id.* ¶ 25. According to Todd, BOP policy mandates removal from RDAP for 100-series infractions. *Id.* Todd is an African American Muslim, and Henry is a Caucasian male. *Id.* ¶ 26. Todd contends that he and Henry were similarly situated regarding the RDAP, and the decision to permanently remove him but to reinstate Henry "lacked a rational basis and was motivated by racial and religious discrimination." *Id.*

4

Defendants' actions have caused Todd to suffer prolonged incarceration, emotional distress, and the loss of a potential sentence reduction. *Id.* ¶ 28. Todd seeks $2,400,000 in damages from each defendant. *Id.* at 6–7.

## B.   Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations

5

omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C.   Analysis

Todd alleges that defendants violated his Fifth Amendment right to procedural due and equal protection and brings this action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Docket 1-2 ¶¶ 1, 29, 40. "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998). In *Bivens*, the United States Supreme Court recognized an implied cause of action under the Fourth Amendment against federal officers for entering and searching the plaintiff's apartment and then arresting him, all without a warrant. 403 U.S. at 389. The Supreme Court has only recognized an implied cause of action for money damages under the Constitution in two other contexts: a Fifth Amendment equal protection claim under the Due Process clause against a Congressman for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth

6

Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (recognizing that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself").

A *Bivens* remedy is not available for all constitutional violations and expanding the implied cause of action under *Bivens* is "a 'disfavored' judicial activity." *Id.* at 135 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Eighth Circuit Court of Appeals has adopted a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (quoting *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005)).

In deciding whether to extend a *Bivens* remedy, the court engages in a two-step inquiry. *See Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, the court considers whether the claim at issue is " 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). If the claim has not been previously recognized as a *Bivens* claim, the court proceeds to step two. At step two, the court asks "if there are 'special factors [that] counsel[] hesitation' " before implying a new cause of action "in the absence of affirmative action by Congress." *Ziglar*, 582 U.S at 136 (quoting *Carlson*, 446 U.S. at 18). Related to this second step is the question of whether an alternative remedy exists. *Id.* at

137; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). If a court has "reason to pause before applying *Bivens* in a new context or to a new class of defendants—[it should] reject the request." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020).

### 1.    Fifth Amendment Due Process

Todd contends that defendants violated his "Fifth Amendment due process rights by removing him from RDAP without adequate procedural protections[.]" Docket 1-2 ¶ 29. According to Todd, his "eligibility for a sentence reduction under 18 U.S.C. § 3261(e) implicates a liberty interest protected by the Fifth Amendment." *Id.* ¶ 30 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Sandin v. Conner*, 515 U.S. 472 (1995)). Whether Todd has a protected liberty interest in a potential sentence reduction upon completion of RDAP is a legal conclusion. On screening, the court does not have to accept Todd's legal conclusions. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

A prisoner does not have a liberty interest in receiving a sentence reduction upon completion of a residential drug abuse program. *Giannini v. Fed. Bureau of Prisons*, 405 F. App'x 96, 97 (8th Cir. 2010) (per curiam); *see also Persechini v. Callaway*, 651 F.3d 802, 807 (8th Cir. 2011) (recognizing that there is no protected liberty interest in halfway-house placement after completing a drug-treatment program, in remaining in a work release program, or in participating in a drug treatment program to qualify for early release

8

(citations omitted)); *Perry v. Ebbert*, 2019 WL 1424618, at \*11 (M.D. Pa. Mar. 29, 2019) (stating that federal prisoner "does not have a protected liberty interest in RDAP participation or its associated early release benefit"). Thus, even if, as Todd alleges, defendants failed to provide him notice, a hearing, and an opportunity to respond before being removed from the RDAP, Todd has failed to state a claim for violation of his Fifth Amendment right to due process.[1]

### 2.    Todd's Fifth Amendment Due Process and Equal Protection Claims Are Not Cognizable under *Bivens*

Even if Todd has a protected liberty interest in participating in the RDAP, the court must apply the two-step inquiry outlined by the Supreme Court to decide whether to extend a *Bivens* remedy to the contexts alleged by Todd. *See Egbert*, 596 U.S. at 492. First, the court considers whether Todd presents a *Bivens* claim in a new context. *Id.* According to the Supreme Court, "new context" is broad, and the Court considers "a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the] Court.' " *Hernandez*, 589 U.S. at 102 (quoting *Ziglar*, 582 U.S. at 139). A case may be meaningfully different:

> [B]ecause of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of

---

[1] Although Todd contends that defendants failed to follow BOP policies and regulations, there is no federal constitutional liberty interest in having prison officials follow prison regulations. *Biron v. Carvajal*, 2021 WL 3047250, at \*28 (D. Minn. July 20, 2021) (internal quotation and citations omitted), *report and recommendation adopted by* 2021 WL 4206302 (D. Minn. Sept. 16, 2021).

disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40.

The United States Supreme Court has never recognized a *Bivens* action arising out of a federal prisoner alleging a violation of his right to procedural due process. *McIntosh v. Gallion*, 2024 WL 4278754, at *7 (D. Minn. Aug. 29, 2024), *report and recommendation adopted by* 2024 WL 4278664 (D. Minn. Sept. 24, 2024). Thus, Todd's procedural due process claims would require extending *Bivens* to a new context. *See Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023) ("The Supreme Court has never authorized a *Bivens* claim for procedural due process or race-based discrimination."); *Yarclay v. Averitt*, 2022 WL 20701862, at *3 (W.D. Okla. July 8, 2022) (holding that a prisoner's allegations that his removal from an RDAP violated his Fifth Amendment right to due process and equal protection are meaningfully different from the three contexts in which the Supreme Court has recognized a *Bivens* remedy), *report and recommendation adopted by* 2023 WL 6302180 (W.D. Okla. Sept. 27, 2023).

In *Davis*, the Supreme Court recognized a Fifth Amendment equal protection claim is cognizable under *Bivens*, but that case involved a discrimination claim in an employment setting, not in a correctional setting in which a prisoner is challenging his conditions of confinement. *Davis*, 442 U.S. at 230–48. "[A] context can be new even if it involves the same constitutional right as an existing case." *Farah*, 926 F.3d at 499. In *Mays v. Smith*, the Fourth

10

Circuit Court of Appeals reasoned that a federal prisoner's race-based equal protection claims arising out of his prison employment "are brought against a new category of defendants—prison officials, as opposed to a former Congressman in *Davis*—operating in a different legal and factual context (prisoner litigation)." 70 F.4th at 203 (citation modified). District courts consistently hold that equal protection claims by prisoners would require extending *Bivens* to a new context because "even a modest extension is still an extension." *Brown v. Cooper*, 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018) (quoting *Ziglar*, 582 U.S. at 148), *report and recommendation adopted by* 2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd in relevant part as modified*, 787 F. App'x 366 (8th Cir. 2019) (per curiam); *see also Hall v. Chapman*, 627 F. Supp. 3d 804, 814–16 (E.D. Mich. 2022) (dismissing a federal prisoner's *Bivens* claim alleging race-discrimination in violation of the Fifth Amendment in connection with prison employment because it arises in a new context); *Jones v. Fedo*, 2021 WL 7287670, at *5 (D. Minn. Dec. 21, 2021) (holding that a *Bivens* claim alleging an equal protection violation for race-based discrimination in the correctional setting arises in a new context), *report and recommendation adopted by* 2022 WL 673261 (D. Minn. Mar. 7, 2022). "Multiple courts considering Fifth Amendment due process and equal protection claims against BOP officials and employees have determined that they arise in a new context from the employment discrimination claim raised in *Davis*." *Solomon v. Antonelli*, 2024 WL 3465195, at *5 (M.D. Fla. July 1, 2024) (collecting cases).

Because the court finds that Todd's Fifth Amendment procedural due process and race-based equal protection claims are "meaningly different" than those *Bivens* claims previously recognized by the Supreme Court, the court proceeds to the second step. In this case, there are special factors that counsel against extending *Bivens* to Todd's Fifth Amendment procedural due process and equal protection claims. First, "[p]risoner civil rights litigation . . . is heavily regulated by Congress, counseling hesitation in the expansion of remedies available to prisoners." *Brown*, 2018 WL 6977594, at *12. "Congress legislated prisoner litigation through the Prisoner Litigation Reform Act [PLRA] and did not provide a damages claim against federal prison officials. . . . Congress likely would have included such a remedy if it had intended to provide one." *Yarclay*, 2022 WL 20701862, at *4 (collecting cases); *see also Mays*, 70 F.4th at 206 (recognizing that the PLRA "does not provide for a standalone damages remedy against federal jailers[.]" (quoting *Ziglar*, 582 U.S. at 149)).

Second, other remedies exist to address the claims alleged by Todd. Federal prisoners who allege that their Fifth Amendment rights have been violated may seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10–542.19. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* § 542.10(a); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (recognizing that federal prisoners "have full access to remedial mechanisms established by the BOP, including suits in

12

federal courts for injunctive relief—long recognized as the proper means for preventing entities from acting unconstitutionally—and grievances filed through the BOP's Administrative Remedy Program."). The availability of alternative remedies is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Hardy v. Bureau of Prisons*, 2019 WL 3085963, at *3 (D. Minn. June 10, 2019) (quoting *Wilkie*, 551 U.S. at 550), *report and recommendation adopted by* 2019 WL 3080916 (D. Minn. July 15, 2019). "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.' " *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137).

Here, Todd alleges that he has "fil[ed] grievances and appeals with FPC Yankton and the BOP regarding his removal from RDAP and the unequal treatment." Docket 1-2 ¶ 50. But he contends that the BOP denied or did not respond to his grievances. *Id.* ¶ 51. That Todd did not obtain relief through the administrative process does not mean that the administrative process is not an alternative remedy. *McIntosh*, 2024 WL 4278754, at *9; *see also Dockery v. Baltazar*, 2021 WL 2014969, at *3 (M.D. Pa. May 19, 2021) ("I join other courts . . . in concluding that the BOP's Administrative Remedy Program provides an alternative process. . . . [T]he fact that [the plaintiff] was unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy." (footnotes omitted)).

13

Finally, recognizing a *Bivens* remedy in the context alleged by Todd poses a risk of judicial interference with prison administration, another special factor that counsels against extending a *Bivens* remedy in a new context. *See Mays*, 70 F.4th at 205–06; *Solomon*, 2024 WL 3465195, at *6. "The BOP's administrative remedy process has the added benefit of limiting judicial interference with prison management while maintaining a method of redress for valid constitutional claims." *Yarclay*, 2022 WL 20701862, at *5.

## III.    Conclusion

In conclusion, because Todd's procedural due process and race-based equal protection *Bivens* claims arise in a new context, and special factors counsel against extending a remedy under *Bivens* in the context alleged by Todd, Todd's complaint fails to state a claim upon which relief can be granted and is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Thus, it is ORDERED:

1.    That the caption is amended to reflect the correct spelling of defendant Jenson's last name ("Jensen"), the correct spelling of defendant Hoxing's last name ("Hoxeng"), and to include defendant Penrose's first name ("Erin").

2.    That Todd's *Bivens* claim alleging a violation of his Fifth Amendment right to procedural due process is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3.    That Todd's *Bivens* claim alleging a violation of his Fifth Amendment right to equal protection is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Dated April 15, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

15